Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ÁNGEL M. EGOZCUE ROSARIO Y OTROS<br><br>**Parte apelada**<br><br>v.<br><br>UNIVERSAL INSURANCE COMPANY Y OTROS<br><br>**Parte apelante** | **TA2026AP00372** | ***APELACIÓN***<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN**<br><br>Caso Núm.:<br>**SJ2018CV07546**<br><br>Sobre:<br>DAÑOS Y PERJUICIOS CONTRACTUALES Y OTROS |
| --- | --- | --- |

Panel integrado por su presidente el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de mayo de 2026.

Comparece ante nos, Universal Insurance Company, en adelante, Universal o apelante, y nos solicita que revisemos la *Sentencia Parcial* emitida el 23 de febrero de 2026 por el Tribunal de Primera Instancia, Sala Superior de San Juan, en adelante, TPI-SJ. Mediante dicha sentencia, el Foro Apelado determinó que una oferta transaccional cursada por la aseguradora apelante constituía un ajuste en virtud de sus obligaciones para resolver una reclamación al amparo del *Código de Seguros de Puerto Rico,* Ley Núm. 77 de 19 de junio de 1957, según enmendada, 26 LPRA sec. 101 *et seq.,* en adelante, Código de Seguros, y ordenó el pago inmediato de la cuantía ofrecida en tal concepto.

Por los fundamentos que expondremos a continuación, *revocamos* el dictamen apelado.

**I.**

El 18 de septiembre de 2018, Ángel M. Egozcue Rosario, en adelante, Egozcue Rosario o apelado, presentó una *Demanda* sobre Incumplimiento de Contrato y Daños y Perjuicios contra, entre

otros, Universal.[1] A grandes rasgos, alegó que la apelante se había negado a resarcirle por los daños físicos que sostuvo su residencia por el paso del Huracán María, así como los daños físicos, los gastos y la pérdida de ingresos de las oficinas comerciales que operaba en varios municipios[2] por causa del mismo fenómeno atmosférico; ello, en contravención a los términos y condiciones de las pólizas de seguro residencial y comercial que mantenía con Universal. Cónsono con lo anterior, solicitó una suma equivalente a $325,584.12 por concepto de las reclamaciones al seguro, más la suma de $130,000.00 por los presuntos daños y perjuicios sostenidos.

Por su parte, el 5 de marzo de 2019, Universal contestó la demanda del apelado.[3] En síntesis, negó todas las alegaciones en su contra y planteó sus defensas afirmativas, entre ellas, haber investigado y ajustado oportuna y razonablemente los daños reclamados a las pólizas de seguro. Afirmó que realizó ofertas de pago dirigidas al señor Egozcue Rosario con arreglo a los términos y condiciones de las pólizas, producto del ajuste aludido.

Tras varios trámites procesales relacionados al descubrimiento de prueba, el 5 de mayo de 2021, se celebró una conferencia sobre el estado de los procedimientos.[4] Conforme surge de la minuta, el señor Egozcue Rosario solicitó de la apelante una enmienda al estimado de los daños reclamados y de un informe pericial, con el fin de obtener un ajuste final que posibilitara la deposición al ajustador de dicha aseguradora.

---

[1] SUMAC TPI, entrada núm. 1. Dado el volumen de los trámites procesales del caso, consultamos directamente las entradas correspondientes al SUMAC del Foro Primario, al cual haremos referencia prospectivamente.

[2] La demanda fue enmendada el 17 de diciembre de 2018 para incluir únicamente las reclamaciones por la oficina comercial sita en San Juan, de conformidad con la Regla 3.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 3.4. *Véase*, SUMAC TPI, entrada núm. 18. Sin embargo, el 29 de agosto de 2019, el caso de marras fue consolidado con los casos BY2018CV00412, CG2018CV00323 y AR2018CV00984, los cuales incluían las mismas reclamaciones para las oficinas comerciales ubicadas en Bayamón, Caguas y Arecibo. *Véase*, SUMAC TPI, entrada núm. 48.

[3] SUMAC TPI, entrada núm. 30.

[4] *Íd.*, entrada núm. 102.

De otro lado, Universal informó haber recibido prueba documental adicional a la que constaba en el expediente original de la reclamación, por lo que no fue considerada en el primer ajuste previo al trámite judicial. Expresó que esta fue sometida posteriormente para que se realizara un ajuste final.

En consecuencia, el Foro Apelado le concedió a Universal hasta el 4 de junio de 2021 para que notificara un nuevo ajuste, y calendarizó una reunión transaccional para el 24 de junio de 2021.[5]

El 11 de junio de 2021, Universal solicitó una prórroga para cumplir con la orden relacionada al nuevo ajuste.[6] Además, informó que se proponía a *solicitar una nueva fecha para la reunión transaccional previamente calendarizada, de manera que el apelado pudiese estudiar el referido ajuste previo a su celebración.*[7]

Culminado el descubrimiento de prueba, el 4 de octubre de 2021, Universal presentó una *Moción de Sentencia Sumaria Parcial.*[8] Simultáneamente, en la misma fecha, el señor Egozcue Rosario sometió otra *Moción de Sentencia Sumaria Parcial.*[9] En esta, solicitó la disposición sumaria a su favor en cuanto a su reclamación a la póliza comercial por la pérdida de ingresos brutos por interrupción de negocios.[10] Alternativamente, requirió el pago compulsorio e inmediato de la suma de $80,663.81, como un pago parcial o adelanto por concepto de los daños reclamados al seguro, presuntamente identificados y ajustados por Universal con relación a todas las propiedades aseguradas.

Para sustentar su último reclamo, sometió dos (2) cartas enviadas por la representación legal de Universal los días 1 y 16 de

---

[5] SUMAC TPI, entrada núm. 102, pág. 2.
[6] *Íd.*, entrada núm. 103.
[7] *Íd.*, pág. 3.
[8] *Íd.*, entrada núm. 112.
[9] *Íd.*, entrada núm. 114.
[10] Esta controversia estaba directamente relacionada a la primera causa de acción incluida en tres (3) de las demandas consolidadas, sobre la cual también versaba la solicitud de sentencia sumaria de Universal.

julio de 2021, con lo cual le remitieron un supuesto ajuste final de todos los daños físicos reclamados a ambas pólizas.[11] Ante esto, adujo que no existía controversia en cuanto a la procedencia del pago parcial, por entender que la apelante admitió la cantidad mínima que debía adjudicársele con la emisión del ajuste aludido.

En atención a ello, el 15 de diciembre de 2021, Universal presentó su oposición a la moción dispositiva presentada por el señor Egozcue Rosario.[12] En lo pertinente, negó la procedencia del pago parcial reclamado por el apelado, dado que este se fundó en misivas expresamente identificadas como comunicaciones transaccionales, protegidas al amparo de la Regla 408 de las Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI, en adelante, Reglas de Evidencia. Por tal razón, adujo que tanto las cartas como los documentos anejados a ellas constituían evidencia inadmisible, lo cual impedía la consideración de su contenido para adjudicar sumariamente cualquier controversia.

Adicionalmente, sostuvo que las cartas remitidas al apelado representaban *ofertas transaccionales*, las cuales fueron producidas luego de evaluar la evidencia sometida durante la etapa del descubrimiento de prueba en el pleito judicial, con el objetivo de concretar ciertas negociaciones conducentes a una transacción. Cónsono con lo anterior, arguyó que las cuantías ofrecidas no fueron producto de un ajuste final, sino de un análisis sujeto a una reserva de derechos, supeditada a los términos y condiciones de las pólizas de seguro.

Consecuentemente, el 14 de febrero de 2022, el señor Egozcue Rosario replicó las alegaciones de Universal respecto a las presuntas ofertas transaccionales.[13] Tras reiterar los planteamientos de su moción dispositiva, sostuvo que el ajuste

---

[11] SUMAC TPI, entrada núm. 114, anejos 15-18.
[12] *Íd.*, entrada núm. 126.
[13] *Íd.*, entrada núm. 136.

enviado por Universal no se encontraba revestido de una postura de negociación, sino que se trataba de una oferta final realizada como parte de las obligaciones que le impone el Código de Seguro. Ante ello, afirmó que las cartas en controversia no podían excluirse al amparo de la Regla 408 de Evidencia.

Sometido el asunto, el 2 de mayo de 2022, el TPI-SJ notificó una *Sentencia Parcial*.[14] En ella, declaró *Ha Lugar* la moción de dispositiva presentada por Universal. Como parte del referido dictamen, el Foro Primario consignó un total de sesenta y cinco (65) determinaciones de hechos, mayormente relacionados a los términos y condiciones de la póliza comercial, y a eventos comprendidos en fechas anteriores a la acción judicial.

Luego de una infructuosa moción de reconsideración,[15] el señor Egozcue Rosario acudió ante esta Curia para impugnar esta determinación mediante un recurso de apelación fechado el 28 de julio de 2022.[16] En el mismo, el apelado señaló la comisión de cuatro (4) errores, entre ellos, que el Foro Primario se equivocó al "no adjudicar y ordenar el pago de los daños mínimos que no están en controversia según los estimados y ajustes de Universal, que asciende, para la cubierta de *Business Interruption* a $32,079.00 y para las cubiertas de daños físicos a $48,584.81, es decir un pago en adelanto por $80,663.81".

Sin embargo, tal error no fue atendido por este Tribunal, dado que la sentencia apelada no contenía determinaciones relacionadas al mismo. Por ende, mediante nuestra *Sentencia* del 20 de diciembre de 2022, un panel hermano confirmó el dictamen apelado, pero lo modificó con el fin de devolver el caso al Foro

---

[14] SUMAC TPI, entrada núm. 147.
[15] *Íd.*, entradas núm. 148-154.
[16] *Íd.*, entrada núm. 156. A tal recurso le fue asignado el alfanumérico KLAN202200597.

Primario para que este resolviera la controversia planteada mediante el error antes mencionado.[17]

Tras recibir el mandato de este Tribunal, y luego de varios incidentes procesales relacionados al estado de los procedimientos, el Foro Primario ordenó la presentación del informe de conferencia con antelación a juicio en o antes del 9 de agosto de 2023.[18] Asimismo, señaló la *Conferencia con Antelación a Juicio y Vista Transaccional* para el 16 de agosto de 2023.

Luego de numerosas prórrogas, el informe preliminar entre abogadas fue sometido el 24 de mayo de 2024,[19] y enmendado el 13 de febrero de 2026.[20]

Por su parte, la vista de conferencia con antelación a juicio fue celebrada inicialmente el 31 de mayo de 2024.[21] No obstante, la misma continuó el 23 de febrero de 2026.[22] Conforme surge de la minuta de la última vista, las partes se reunieron para discutir una *oferta transaccional* extendida por Universal, la cual fue denegada por el señor Egozcue Rosario. Consecuentemente, el Foro Primario informó que dictaría una sentencia para atender la controversia que quedó pendiente de adjudicación luego del trámite apelativo.

Así las cosas, el 23 de febrero de 2026, el TPI-SJ emitió la *Sentencia Parcial* objeto de revisión en este recurso.[23] En ella, el Foro Primario incorporó las determinaciones de hechos consignadas en la *Sentencia Parcial* notificada el 2 de mayo de 2022. Adicionalmente, tras reevaluar las mociones dispositivas presentadas por las partes litigantes y las sentencias que constan

---

[17] SUMAC TPI, entrada núm. 158.
[18] *Íd.*, entrada núm. 166.
[19] *Íd.*, entradas núm. 207-208.
[20] *Íd.*, entradas núm. 247-249.
[21] *Íd.*, entradas núm. 212
[22] *Íd.*, entrada núm. 256.
[23] *Íd.*, entrada núm. 255.

en el expediente, formuló las siguientes determinaciones de hechos:

1. El 1 de julio de 2021, Universal Insurance Company, envió su ajuste con respecto a la propiedad asegurada que ubica en la Ave. San Patricio, Guaynabo, PR. Allí estimó y ajustó los daños en un total de $11,059.58.

2. El 1 de julio de 2021, Universal Insurance Company, envió su ajuste con respecto a la propiedad asegurada que ubica en Caguas, PR. Allí estimó y ajustó los daños en un total de $600.00.

3. El 1 de julio de 2021, Universal Insurance Company, envió su ajuste con respecto a la propiedad asegurada que ubica en Arecibo, PR. Allí estimó y ajustó los daños en un total de $840.00.

4. El ajuste de Universal Insurance Company, con respecto a la propiedad asegurada que ubica en Parque Forestal San Juan, y que es la residencia del Demandante, fue de $36,085.23.

5. El estimado y ajuste de Universal Insurance Company con respecto a la cubierta de Business Interruption, es de $32,079.00.

A base de estas, el Foro Apelado determinó que la cuantía ofrecida por Universal mediante la carta del 1 de julio de 2021 no constituía una oferta transaccional, sino un ajuste realizado como parte de la obligación que le impone el Artículo 27.162 del Código de Seguros, 26 LPRA sec. 2716b. Ante ello, razonó que tal misiva no era una comunicación privilegiada cobijada por la Regla 408 de Evidencia, 32 LPRA Ap. VI, R. 408. En consecuencia, ordenó el pago inmediato de $80,663.81 a favor del señor Egozcue Rosario en concepto de ajuste final, sin que ello se tradujera en un pago en finiquito. Esto, pues entendió que no existía controversia que tal cantidad se adeudaba, y que Universal se obligó a satisfacer la misma al cumplir con su obligación de realizar un ajuste.

En desacuerdo, el 10 de marzo de 2026, la apelante presentó una moción de reconsideración,[24] la cual fue declarada *No Ha Lugar* mediante una *Resolución* emitida el 11 de marzo de 2026.[25]

Aún inconforme, el 10 de abril de 2026, Universal recurrió ante esta Curia mediante un recurso de apelación y formuló el siguiente señalamiento de error:

> ERRÓ EL TPI AL RESOLVER MEDIANTE SENTENCIA SUMARIA QUE UNIVERSAL ESTÁ OBLIGADA A EMITIR INMEDIATAMENTE AL APELADO EL PAGO CORRESPONDIENTE A LAS OFERTAS TRANSACCIONALES REALIZADAS EN JULIO DE 2021 YA QUE EXISTE CONTROVERSIA SOBRE SI DICHAS OFERTAS DEBEN SER CONSIDERADAS AJUSTES U OFERTAS TRANSACCIONALES.

Mediante *Resolución* del 15 de abril de 2026, ordenamos al apelado la presentación de su alegato en o antes del 30 de abril de 2026. Tras habérsele concedido una prórroga, el 11 de mayo de 2026, el señor Egozcue Rosario presentó su *Alegato en Oposición a Apelación*.[26]

Perfeccionado el recurso, procedemos a resolver.

## II.

### A. Apelación Civil

Las Reglas de Procedimiento Civil de Puerto Rico se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio, entiéndase las alegaciones, mociones, descubrimiento de prueba, vista evidenciaria, sentencia, reconsideración, apelación, y sus efectos escalonados. Cada etapa se sirve de la anterior y se

---

[24] SUMAC TPI, entrada núm. 257.

[25] *Íd.*, entrada núm. 258.

[26] El apelado argumentó en su alegato que el recurso ante nos debía ser acogido como un recurso discrecional de *certiorari*, en lugar de una apelación. Sin embargo, adelantamos que tal planteamiento carece de méritos, por tratarse de una determinación que pretende poner fin a una controversia proveniente de las mociones de sentencia sumaria previamente presentada por las partes; en este caso, el pago de los presuntos daños estimados a los que el apelado mínimamente tiene derecho dentro del proceso de reclamación a las pólizas de seguro.

proyecta, entonces, para la próxima. *Vega v. Alicea,* 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel que se presenta ante un foro de mayor jerarquía cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Foro de Primera Instancia. Regla 52.1 y 52.2 de Procedimiento Civil, *supra*; *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019). Véase, además, R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La apelación no es un recurso discrecional como en los casos de *certiorari*. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, se reconoce que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones, cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017). Regla 13(A) del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 22, 216 DPR ___ (2025); Art. 4.006(a) Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24y.

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del

caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *Bathia Gautier v. Gobernador*, 199 DPR 59, 182 (2017); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

### B. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Conklin et al. v. Passalacqua et als.*, 2026 TSPR 18, 217 DPR ___ (2026); *Coop. Seguros Múltiples y otros v. ELA y otros*, 2025 TSPR 78, 216 DPR ___ (2025); *Consejo Tit. v. Rocca Div. Corp. et als*, 2025 TPSR 6, 215 DPR ___ (2025); *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR ___ (2025); *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2023); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022).

Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *BPPR v. Zorrilla Posada y otro,* 214 DPR 329, 337 (2024); *Cruz, López v. Casa Bella y otros*, supra, pág. 993; *Oriental Bank v. Caballero García,* supra, pág. 678; *Segarra Rivera v. Int'l. Shipping et al.,*

supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.*

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 979; *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Id.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas *u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal*; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, *supra*; *Oriental Bank*

*v. Caballero García,* supra, pág. 679; *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019) (Énfasis suplido). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *BPPR v. Cable Media,* supra; *BPPR v. Zorrilla Posada y otro,* supra; *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Id.* Es decir, el hecho de no oponer a un petitorio sumario no implica que este necesariamente proceda, sin embargo, si no se demuestra que existen controversias sustanciales sobre los hechos materiales, nada impide al foro sentenciador de dictar sentencia sumaria. *Ramos Pérez v. Univisión,* supra, pág. 215.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, supra. *Id.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Id.*

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *E.L.A. v. Cole*, supra, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá, cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Soto y otros v. Sky Caterers,* 2025 TSPR 3, 215 DPR ___ (2025); *Cruz, López v. Casa Bella y otros,* supra, pág. 993; *Acevedo y otros v. Depto. Hacienda y otros,* 212 DPR 335, 350 (2023); *Segarra Rivera v. Int'l. Shipping et al.,* supra. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Id.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 471-472 (2023).

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el Foro Primario. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.
>
> *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *Conklin et al. v. Passalacqua et als.*; *Negrón Castro y otros v. Soler Bernardini y otros,* 2025 TSPR 96, 216 DPR ___ (2025), *Batista Valentín v. Sucn. Batista Valentín y otros,* 2025 TSPR 93, 216 DPR ___ (2025). *Coop. Seguros Múltiples y otros v. ELA y otros,* supra; *Consejo Tit. v. Rocca Div. Corp. et als,* supra; *Soto y otros v. Sky Caterers,* supra; *BPPR v. Cable Media, BPPR v. Zorrilla Posada y otro,* supra; *Cruz, López v. Casa Bella y otros,* supra, pág. 994. Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia

interpretativa. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar de *novo* si el foro primario aplicó correctamente el derecho.

### C. Ajustes en las reclamaciones de pólizas de seguros

Reiteradamente nuestro Tribunal Supremo ha establecido que la materia de seguros está investida de alto interés público debido a que desempeña un trascendental rol en la protección de riesgos que amenazan la vida o el patrimonio de los ciudadanos. *Negrón Castro et al. v. SLG et al.*, 2025 TSPR 96, 216 DPR ___ (2025); *Consejo de Titulares v. Triple-S*, 2025 TSPR 82, 216 DPR ___ (2025); *Carrasquillo Pérez v. CSM*, 214 DPR 1033, 1049 (2024); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 988-989 (2023); *Rivera Matos v. Triple-S*, supra, pág. 1019; *R.J. Reynolds v. Vega Otero*, 197 DPR 699, 706-707 (2017); *Natal Cruz v. Santiago Negrón et al.*, 188 DPR 564, 575-576 (2013). De esta forma, la industria de seguros está extensamente regulada por el Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.*, y por el Código Civil de Puerto Rico, 31 LPRA sec. 5311 *et seq.*, de manera supletoria. *Negrón Castro et al. v. SLG et al.*, supra; *Serrano Picón v. Multinational Life Ins.*, supra, pág. 989.

En lo pertinente, el Código de Seguros, *supra*, secs. 2701-2736, reglamenta expresamente las "prácticas comerciales en el negocio de seguros". *Carpets & Rugs v. Tropical Reps.,* 175 DPR 615, 632 (2009)*; Assoc. Ins. Agencies, Inc. v. Com. Seg. PR,* 144 DPR 425, 442 (1997). "Uno de los renglones mayormente reg[lament]ado por el Código de Seguros de Puerto Rico" es el relacionado con "las prácticas desleales y fraudes en el negocio de los seguros", lo cual incluye lo relativo al "ajuste de reclamaciones". *Carpets & Rugs v. Tropical Reps.,* supra, pág. 632; *Comisionado de Seguros v. PRIA*, 168 DPR 659, 673 (2006). En conexión con el manejo de reclamaciones, el Código de Seguros,

*supra*, sec. 2716a, prohíbe un número de actos o prácticas desleales.

Específicamente, el Artículo 27.010 del Código de Seguros, *supra,* sec. 2701, dispone que:

> El propósito de este capítulo es el de regular las prácticas comerciales en el negocio de seguros, definiendo o disponiendo para la determinación de todas las prácticas en Puerto Rico que constituyen métodos desleales de competencia, o actos o prácticas engañosas, y prohibiendo las prácticas comerciales que así se definan o determinen.

Cónsono con lo anterior, el Artículo 27.162 del Código de Seguros, *supra*, sec. 2716b(1), establece que la aseguradora cuenta con la obligación de realizar, razonablemente, una investigación, ajuste y resolución de la reclamación dentro del término de noventa (90) días después de haberse sometido dicha reclamación. *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 151-152 (2021).

La obligación antes descrita puede ser cumplida cuando el asegurador emite una oferta razonable que incluya un estimado de los daños sufridos por el asegurado. *Carpets & Rugs v. Tropical Reps, supra*, pág. 635. Con relación a esto, nuestro Tribunal Supremo interpretó que:

> [...]. Al emitir dicho documento, el asegurador está informando que después de una investigación diligente, un análisis de los hechos que dieron lugar a la pérdida, un examen de la póliza y sus exclusiones, y un estudio realizado por el ajustador de reclamaciones del asegurador, se concluye que la póliza cubre ciertos daños reclamados por el asegurado, en las cantidades incluidas en la comunicación. [...].
>
> Siendo este documento emitido por el asegurador el producto de una investigación adecuada y un análisis detenido, éste constituye la postura institucional del asegurador frente a la reclamación de su asegurado. En dicho documento no existen concesiones del asegurador hacia su asegurado, pues se trata de un informe objetivo del asegurador en cuanto a la procedencia de la reclamación y la existencia de cubierta según la póliza. *Íd.*

Nuestro Máximo Foro reiteró que no procede permitir que un asegurador se retracte del ajuste provisto a su asegurado, ya que significa que la resolución producto de la investigación no es final, lo cual propicia una dilación en exceso a los noventa (90) días dispuestos por ley para resolver una reclamación. *Carpets & Rugs v. Tropical Reps*, supra, págs. 635-636. Asimismo, retractarse del ajuste provisto fomenta incertidumbre en los asegurados. *Íd.*, pág. 636.

De otra parte, el Código de Seguros, *supra*, dispone que la oferta que realice una aseguradora debe ser el resultado de un ajuste rápido, justo y equitativo, y por una cantidad razonable según el derecho del reclamante. Véase, Artículo 27.161 (6) y (8) del Código de Seguros, *supra*, sec. 2716a. Es menester destacar que dicha oferta final de una aseguradora no equivale a una oferta de transacción o a una postura de negociación en otros contextos que no están sujetos a la reglamentación del campo de los seguros. *Carpets & Rugs v. Tropical Reps*, supra, pág. 639.

Por consiguiente, una aseguradora no puede, "ante un reclamo judicial de su asegurado, den[egar] partidas que en su ajuste inicial entendió procedentes". *Íd.*, pág. 636. Lo anterior, responde a que esto último no se trata de una postura de negociación conducente a un posible contrato de transacción, sino que constituye una oferta que se realiza "como parte de su obligación al amparo del Código de Seguros de resolver de forma final una reclamación de un asegurado en el término máximo de noventa días". *Íd.*, pág. 639.

Conforme a la discusión que antecede, cuando una aseguradora cumple con su obligación en ley de enviar una oferta razonable al asegurado, esta constituye meramente el estimado de los daños sufridos. *Feliciano Aguayo v. MAPFRE*, supra, pág. 164. Así, "el documento que emite el asegurador producto de una

investigación y análisis detenido constituye puramente la postura institucional del asegurador frente a la reclamación de su asegurado; es decir, un reconocimiento de deuda al menos en cuanto a las sumas ofrecidas como ajuste, pero no una oferta producto de una controversia *bona fide* o la iliquidez de la deuda, en este caso, de la reclamación del asegurado". *Feliciano Aguayo v. MAPFRE,* supra, págs. 164-165.

Esto, pues, en el informe de ajuste que emite una aseguradora no existen concesiones de la aseguradora hacia su asegurado, ya que este versa sobre un informe objetivo respecto a la procedencia de la reclamación y la existencia de una cubierta conforme a la póliza. *Feliciano Aguayo v. MAPFRE,* supra, pág. 165. Como consecuencia, la emisión de un informe de ajuste se implica la inexistencia de una controversia legítima entre el asegurador y el asegurado. *Íd.*

A pesar de ello, nada impide que el asegurador y el asegurado formalicen un contrato de transacción en cuanto a la reclamación, utilizando el ajuste como base de las negociaciones precedentes. *Feliciano Aguayo v. MAPFRE,* supra, págs. 165-166; *Carpets & Rugs v. Tropical Reps,* supra, pág. 636. La única limitación a tal facultad es la cantidad incluida en dicha comunicación o en la postura inicial. *Feliciano Aguayo v. MAPFRE,* supra, pág. 166; *Carpets & Rugs v. Tropical Reps,* supra. De esta manera, las partes pueden renunciar recíprocamente a ciertas partidas, o a modificar las que fueron ofrecidas originalmente. *Feliciano Aguayo v. MAPFRE,* supra; *Carpets & Rugs v. Tropical Reps,* supra.

### D. Ofertas Transaccionales en la Industria de Seguros y la Regla 408 de Evidencia

La transacción es un contrato por el cual las partes, mediante concesiones recíprocas, ponen fin a un litigio o a la

incertidumbre sobre alguna relación jurídica. Art. 1497 del Código Civil de 2020, 31 LPRA sec. 10641; *Demeter Int'l v. Srio. Hacienda*, 199 DPR 706, 729 (2018). Deberán cumplirse tres (3) elementos para que un acuerdo pueda considerarse un contrato de transacción, a saber: la existencia de una controversia entre dos o más personas, la intención de ponerle fin al litigio y sustituir la relación incierta entre las partes, y la necesidad de concesiones recíprocas entre ellas. *Feliciano Aguayo v. MAPFRE*, supra, pág. 156; *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 903 (2012); *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 498 (2009); *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860, 870 (1995).

Este tipo de contrato se interpreta restrictivamente y produce los efectos de la cosa juzgada. Arts. 1499-1500 del Código Civil de 2020, *supra*, secs. 10642-10643. Esto significa, que las partes tienen que considerar los puntos discutidos como definitivamente resueltos, y no pueden volver nuevamente sobre estos. *Citibank v. Dependable Ins. Co. Inc.*, 121 DPR 503, 516 (1988).

Las negociaciones para transigir en el contexto de una reclamación a un seguro es un acto contemplado por el Art. 11.370 del Código de Seguros, *supra*, sec. 1136, el cual dispone lo siguiente en cuanto a cómo las aseguradoras pueden administrar las reclamaciones:

> Sin que sea una limitación de ningún derecho o defensa que de otro modo pueda tener un asegurador, ninguno de los siguientes actos por un asegurador o a nombre del mismo se considerará que constituye una renuncia de cualquier disposición de una póliza o de cualquier defensa del asegurador con arreglo a la misma:
>
> [....]
>
> (3) Investigar cualquier pérdida o reclamación con arreglo a una póliza, o entrar en negociaciones con miras a una posible liquidación de tal pérdida o reclamación.

Por su parte, las Reglas de Evidencia contienen disposiciones que persiguen la exclusión de prueba con el fin de promover ciertas acciones, conductas o comportamientos que el Estado desea fomentar por cuestiones de política pública. *Carpets & Rugs v. Tropical Reps*, supra, pág. 629, citando a E.L. Chiesa Aponte, *Tratado de Derecho Probatorio*, Santo Domingo, Editora Corripio, 1998, T.1, Sec. 3.1, págs. 150–151. Entre estas, se encuentra la Regla 408 de Evidencia, 32 LPRA Ap. VI, R. 408, la cual establece que:

> (A) No es admisible para probar la validez o falta de validez de una reclamación, la cuantía reclamada o para impugnar a base de una declaración anterior inconsistente o por contradicción:
>
>> (1) Evidencia de que una persona (a) ha provisto, ofrecido o prometido proveer o (b) ha aceptado, ofrecido o prometido aceptar algo de valor, con el propósito de intentar o lograr transigir una reclamación cuando estaba en controversia su validez o la cuantía reclamada, o
>>
>> (2) Evidencia sobre conducta o declaraciones efectuadas durante gestiones dirigidas a transigir.
>
> [....]

La precitada Regla se fundamenta en la fuerte política pública que persigue la transacción de los pleitos sin tener que acudir a los tribunales o de celebrar un juicio plenario. *Carpets & Rugs v. Tropical Reps*, supra, pág. 630.[27] Además, la exclusión de este tipo de evidencia se favorece en tanto las ofertas transaccionales no representan, ordinariamente, una aceptación de la legitimidad de la reclamación, sino que se cursan con la creencia de que al continuar un pleito se producen molestias que se prefieren evitar. *Íd.* Así nuestro Máximo Foro interpretó que:

---

[27] La exclusión de evidencia sobre ofertas transaccionales se discute en el precitado caso bajo la antigua Regla 22(B) de las Reglas de Evidencia de 1979, cuyas disposiciones fueron recogidas por las Reglas de Evidencia de 2009 mediante la nueva Regla 408, por lo que tal normativa continúa vigente y aplicable al caso de marras.

> [N]o necesariamente las ofertas que puedan intercambiarse entre las partes durante las negociaciones conducentes a una transacción reflejan la veracidad de sus responsabilidades y posiciones, pues en todo proceso de transacción existen sacrificios mutuos de los actores para llegar a la resolución de sus diferencias de modo que se evite o finalice un pleito. Y esto tiene que ser así, debido a la naturaleza del contrato de transacción.

*Íd.*

Por tal razón, las comunicaciones u ofertas comprendidas bajo la Regla 408 de Evidencia tienen que ineludiblemente referirse a aquellas producidas en el marco de un proceso de negociación encaminado a concretar un contrato de transacción. *Íd.*, pág. 631.

A tenor con ello, nuestro Tribunal Supremo delimitó los requisitos para que una comunicación u oferta transaccional quede comprendida en el ámbito de la Regla 408 de Evidencia, a saber: 1) que exista una controversia entre las partes al momento de su emisión; 2) haberse realizado dentro de un proceso en el cual las partes deseen sustituir la incertidumbre jurídica de su relación mediante una transacción, y; 3) debe contener aquellas concesiones que la parte oferente se dispone a reconocer con el fin de finalizar la controversia persistente. *Feliciano Aguayo v. MAPFRE,* supra, pág. 164; *Carpets & Rugs v. Tropical Reps,* supra, pág. 631.

Adicionalmente, la evidencia a excluirse debe tratarse de una comunicación u oferta que nazca de la voluntad de una de las partes. *Carpets & Rugs v. Tropical Reps,* supra. Es decir, no puede concernir una comunicación u oferta realizada en cumplimiento a un mandato de ley u obligación, pues este tipo de comunicaciones no fueron producidas con la verdadera intención de liquidar una controversia sin llegar a los tribunales. *Feliciano Aguayo v. MAPFRE,* supra; *Carpets & Rugs v. Tropical Reps,* supra, pág. 632.

**III.**

En su *único señalamiento de error,* Universal sostiene que el TPI-SJ se equivocó al resolver por la vía sumaria que el señor Egozcue Rosario debía ser remunerado inmediatamente en concepto de pago parcial por la cuantía ofrecida mediante las cartas del 1 y 16 de julio de 2021. Ello, tras haberse determinado que estas representaban un ajuste final de la reclamación a las pólizas en controversia al amparo del Código de Seguros, y no una oferta transaccional protegida por las reglas de exclusión contempladas en las Reglas de Evidencia. *Le asiste la razón.*

En esencia, la apelante plantea que las cartas aludidas, así como los documentos que las acompañaban, constituían una oferta transaccional realizada en un contexto litigioso, por lo que no debían considerarse como un ajuste realizado en cumplimiento con su obligación bajo el Artículo 27.162 del Código de Seguros. Arguye que, al haberse identificado como comunicaciones confidenciales bajo la Regla 408 de Evidencia, el Foro Primario no podía utilizar el contenido de estas para realizar cualquier determinación relacionada a ellas.

Asimismo, la apelante reitera que las referidas cartas fueron expresamente remitidas con la intención de concretar un acuerdo transaccional que pusiera fin al trámite judicial. Arguye que la oferta contenida en ellas no puede convertirse automáticamente en un ajuste final por el simple hecho de haber sido cursada por una aseguradora dentro de un pleito judicial, aun cuando la misma se haya apoyado en algún ajuste.

Cónsono con lo anterior, afirma que el dictamen apelado debe ser revocado por existir controversia en cuanto a la naturaleza de las comunicaciones impugnadas, lo cual impedía la resolución sumaria de la controversia que nos atañe.

Por su parte, amparado en su interpretación de la norma establecida en *Carpets & Rugs v. Tropical Reps.*, supra, el señor Egozcue Rosario primordialmente alega que, mediante las cartas en controversia, Universal realmente realizó un ajuste de los daños estimados en virtud del Artículo 27.162 del Código de Seguros, tal cual le fue ordenado por el Foro Apelado. Ante ello, arguye que la apelante remitió un ajuste final desprovisto de concesión alguna, fuera del ámbito de la Regla 408 de Evidencia, por lo que no podía catalogarlo posteriormente como un esfuerzo transaccional.

El apelado sostiene, además, que la apelante nunca sometió otros documentos que acreditaran la naturaleza que le pretendía atribuir a dichas comunicaciones. Por lo tanto, alega que Universal no podía negarse a pagar las cuantías presuntamente admitidas mediante dichas comunicaciones, lo que facultaba su adjudicación sumaria.

Cual citado, una oferta transaccional es considerada como tal cuando nace de la voluntad del oferente, con la clara intención de poner fin a la incertidumbre jurídica existente entre las partes. Asimismo, tal oferta debe emitirse ante la existencia de una controversia activa entre las partes, con el fin de liquidar la misma dentro de un proceso adversativo, y debe contener las concesiones que se dispone a realizar el oferente para concretar un acuerdo de transacción. Solo bajo estas circunstancias, una oferta puede ser calificada como transaccional, merecedora del privilegio evidenciario que proveen las reglas de exclusión contempladas en nuestro ordenamiento probatorio.

Tras un cauteloso examen del extenso expediente judicial, contrapuesto a la normativa vigente, colegimos que el TPI-SJ erró con la emisión del dictamen sumario apelado. En particular, por haber emitido sus determinaciones a base de una clara oferta

transaccional, la cual merece la protección de las reglas de exclusión contempladas en las Reglas de Evidencia. Veamos.

En este caso, contrario a lo resuelto por nuestro Tribunal Supremo en el caso de *Carpets & Rugs v. Tropical Reps.*, supra, Universal cursó la oferta cuestionada dentro del proceso judicial iniciado por el señor Egozcue Rosario, luego de que este último cuestionara las partidas estimadas y ajustadas que le fueron ofrecidas durante el trámite administrativo de reclamación inicial.[28] Su cuestionamiento se fundó en su interpretación de las cubiertas de las pólizas que mantenía con Universal respecto a los daños físicos de las propiedades aseguradas y a los ingresos cobijados por la pérdida de ingresos por interrupción de negocios.

Al así hacerlo, el apelado generó una controversia legítima con relación a las referidas cubiertas y los ajustes emitidos inicialmente, la cual persistía al momento en que la apelante remitió su oferta transaccional mediante las cartas impugnadas.

Asimismo, Universal *expresamente* comunicó la oferta cuestionada con la intención de iniciar las conversaciones correspondientes para negociar un acuerdo transaccional con relación al pleito judicial.[29] No hallamos en tal lenguaje alguna expresión que nos mueva a interpretar que dicha comunicación se emitió con el fin de resolver la reclamación del apelado, sino para finiquitar la relación adversa creada con la acción judicial.

Además, nos convencen los argumentos de la apelante en cuanto a que una oferta transaccional no debe convertirse indiscriminadamente en un ajuste por el solo hecho de haber sido realizada por una aseguradora. La normativa vigente en estas circunstancias no avala tal pretensión.

---

[28] *Véase*, SUMAC TPI, entrada núm. 208, anejo 7, págs. 1-3, 51-53.
[29] *Véase*, SUMAC TPI, entrada núm. 114, anejos 15, pág.1; anejo 16, pág. 2.

La única instancia en que una oferta cursada por una aseguradora se considera realmente un ajuste resulta ser cuando su emisión responde al cumplimiento estatutario de las obligaciones que emanan del Artículo 27.162 del Código de Seguros; es decir, cuando tal oferta se genera para resolver oportunamente la reclamación al seguro, y no como parte de un acto voluntario de la aseguradora para iniciar un proceso de negociación con miras a sustituir la incertidumbre jurídica creada con el asegurado.[30]

Aquí, si bien es cierto que el Foro Primario le ordenó a Universal la emisión de un nuevo ajuste, no podemos desligar el hecho que dicho Foro calendarizó, simultáneamente, una reunión transaccional entre las partes.

En ocasión de auscultar el elemento voluntario detrás de la oferta realizada por Universal, resulta particularmente determinante que esta, al solicitar una prórroga para cumplir con la orden mencionada, también informó que se proponía a realizar un ajuste que el apelado debía estudiar *previo a la celebración de la reunión transaccional* calendarizada por el Foro Primario. A esto, le sumamos la consignación explícita de la intención de la apelante en iniciar negociaciones transaccionales.

Adicionalmente, según surge de las cartas aludidas, Universal emitió su oferta junto a una reserva de derechos, y puntualizó que la misma no constituía una renuncia a los términos y condiciones a los términos y condiciones de las pólizas reclamadas. Por consiguiente, nos resulta evidente que tal oferta fue emitida como parte de sus derechos al amparo del Artículo 11.370 del Código de Seguros, y no bajo las obligaciones que le

---

[30] Véase, *Feliciano Aguayo v. MAPFRE,* supra, pág. 166; *Carpets & Rugs v. Tropical Reps,* supra, págs. 631-632.

impone el Artículo 27.162 de este último.[31] El conjunto de estas manifestaciones no nos permite concluir que dicha oferta fue realizada forzosamente como parte de un mandato de ley.

Por último, apreciamos que la oferta transaccional cursada por Universal contenía, en efecto, ciertas concesiones con las cuales pretendía ceder de su postura inicial. En primer lugar, la cuantía ofrecida excedía aquella remitida junto a los ajustes realizados durante el proceso inicial de reclamación. En segundo lugar, y aún más determinante, Universal remitió una oferta concreta, a pesar de entender que la documentación sometida por el señor Egozcue Rosario adolecía de múltiples inconsistencias con relación a los informes periciales que el apelado había producido durante el descubrimiento de prueba.[32]

Tal como se puede apreciar, resulta patente que la oferta cursada por Universal mediante las cartas del 1 y 16 de julio de 2021 cumplen con todos los requisitos para ser calificadas como una oferta transaccional. El hecho de que Universal utilizara un estimado de los daños para construir una base en la cual se fundaran las futuras negociaciones no lo convierte automáticamente en su postura objetiva institucional.[33] En especial, cuando dicho estimado fue generado a base de prueba inconsistente y sometida como parte del descubrimiento de prueba en un procedimiento litigioso, y no durante el proceso inicial de reclamación.

Como cuestión de derecho, la normativa vigente no prohíbe la emisión de un informe basado en una investigación de las

---

[31] Contrario a las ofertas de pago parcial cursadas los días 30 de enero de 2018 y 5 de noviembre de 2018 —las cuales sí fueron producto de un ajuste realizado bajo la reclamación del señor Egozcue Rosario al amparo del Código de Seguros— la oferta realizada en julio de 2021 fue cursada como un esfuerzo por parte de la aseguradora apelante para llegar a un acuerdo recíproco que pusiera fin al litigio. El propio apelado así lo reconoce en su alegato, al identificar correctamente que las primeras no fueron sujetas a reserva alguna de derecho, y como tal, eran producto de ajustes a su reclamación. *Véase*, SUMAC TA, entrada núm.6, alegato del apelado, pág. 17.

[32] *Véase*, SUMAC TPI, entrada núm. 114, anejo 16, pág. 1.

[33] Véase, *Feliciano Aguayo v. MAPFRE,* supra, pág. 165-166.

pérdidas reclamadas con el fin de entrar en negociaciones que posibiliten la liquidación de dicha reclamación; en esta ocasión, el trámite judicial. Universal claramente consignó los propósitos para los cuales remitió el referido informe, y su intención de atribuirles a estos la naturaleza confidencial y privilegiada facultada por la Regla 408 de Evidencia, *supra.*

Debemos puntualizar que, precisamente, es este tipo de situaciones las que la precitada Regla pretende evitar o disuadir. Admitir en evidencia una oferta transaccional para establecer la responsabilidad pecuniaria de una aseguradora con su asegurador es un acto vedado por nuestro ordenamiento probatorio.

En consecuencia, concluimos que tales cartas, así como los documentos que las acompañaban, representaban una oferta transaccional, por lo cual debían ser excluidas por el Foro Primario al amparo de la Regla 408 de Evidencia, *supra.* Ante esto, tales comunicaciones eran inadmisibles para propósitos de adjudicar las cuantías ofrecidas por la aseguradora apelante con fines transaccionales. Ello impedía que el Foro Apelado las considerara como ajustes en virtud del Código de Seguros y dispusiera sumariamente de la controversia planteada por el apelado a base de la oferta transaccional de Universal. En consecuencia, el TPI-SJ incurrió en el error señalado.

**IV.**

Por los fundamentos antes expuestos, **revocamos** *el dictamen recurrido en su totalidad.* Se devuelve el caso al Foro Primario para que continúen los procedimientos en conformidad a lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos concurre por considerar que la oferta en controversia no constituyó el "ajuste" que obligaría a una

aseguradora.  Ello pues la oferta se emitió luego de realizado el ajuste inicial y luego de presentada la acción de referencia, en el contexto del intento por ambas partes y el tribunal de propiciar una transacción.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones